EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GARY W. SCHONS
Senior Assistant Attorney General
KEVIN VIENNA
Supervising Deputy Attorney General

JAMES D. DUTTON, State Bar No. 73334
Supervising Deputy Attorney General
 110 West A Street, Suite 1100
 San Diego, CA 92101
 P.O. Box 85266
 San Diego, CA 92186-5266
 Telephone: (619) 645-2212
 Fax: (619) 645-2191
 Email: Jim.Dutton@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **KEVIN GUNN,** | Civil Case No. 08-0972 LAB (WMc) |
| Petitioner, | **NOTICE OF MOTION AND MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| **J. F. SALAZAR, WARDEN,** | |
| Respondent. | Judge: The Hon. William McCurine, Jr. |

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5
   JAMES D. DUTTON, State Bar No. 73334
6  Supervising Deputy Attorney General
     110 West A Street, Suite 1100
7    San Diego, CA 92101
     P.O. Box 85266
8    San Diego, CA 92186-5266
     Telephone: (619) 645-2212
9    Fax: (619) 645-2191
     Email: Jim.Dutton@doj.ca.gov
10
   Attorneys for Respondent
11
                    IN THE UNITED STATES DISTRICT COURT
12
                 FOR THE SOUTHERN DISTRICT OF CALIFORNIA
13

14  | KEVIN GUNN, | Civil Case No. 08-0972 LAB (WMc) |
15  | Petitioner, | **NOTICE OF MOTION AND** |
16  | **MOTION TO DISMISS** |
    | v. | **AMENDED PETITION FOR** |
17  | | **WRIT OF HABEAS CORPUS** |
    | **J. F. SALAZAR, WARDEN,** |
18  | Respondent. | Judge: The Hon. Larry A. Burns |
19

20      TO: PETITIONER KEVIN GUNN, PROCEEDING PRO SE

21

22      PLEASE TAKE NOTICE that Respondent moves the United States District Court,

23  Southern District, to dismiss Petitioner's First Amended Petition for Writ of Habeas Corpus because

24  the Amended Petition is barred by the applicable statute of limitations, and contains two claims

25  (grounds) that have not yet been fairly presented to the State Courts (unexhausted).  Petitioner is in

26  the lawful custody of **J. F. SALAZAR, WARDEN,** Chuckawalla Valley State Prison, Blythe,

27  California.

28  ///

1    No hearing on this Motion is required.  This Motion is based on this Notice of Motion, the

2  accompanying Memorandum of Points and Authorities, and on the pleadings and state court records

3  that have been or will be lodged with this Court.

4    WHEREFORE, Respondent respectfully requests that the Amended Petition be dismissed.

5    Dated:  August 26, 2008

6    Respectfully submitted,

7    EDMUND G. BROWN JR.
     Attorney General of the State of California

8    DANE R. GILLETTE
     Chief Assistant Attorney General

9

10   GARY W. SCHONS
     Senior Assistant Attorney General

11   KEVIN VIENNA
     Supervising Deputy Attorney General

12

13   /s/ James D. Dutton

14   JAMES D. DUTTON
     Supervising Deputy Attorney General
     Attorneys for Respondent

15

16   Jim.Dutton@doj.ca.gov

17

18   JDD:llc
     80273718.wpd

19   SD2008801742

20

21

22

23

24

25

26

27

28

---

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:    ***Gunn v. Salazar***                              Case No.:    **08-0972 LAB (WMc)**

I declare:
I am employed in the Office of the Attorney General, which is the office of a member of the
California State Bar, at which member's direction this service is made. I am 18 years of age or
older and not a party to this matter. I am familiar with the business practice at the Office of the
Attorney General for collection and processing of correspondence for mailing with the United
States Postal Service. In accordance with that practice, correspondence placed in the internal
mail collection system at the Office of the Attorney General is deposited with the United States
Postal Service that same day in the ordinary course of business.

On <u>August 26, 2008</u>, I served the following documents: **NOTICE OF MOTION AND
MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS**
by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid,
in the internal mail collection system at the Office of the Attorney General at 110 West A Street,
Suite 1100, P.O. Box 85266, San Diego, CA  92186-5266, addressed as follows:

Kevin O. Gunn
P-78894
Chuckawalla Valley State Prison
P.O. Box 2289
Blythe, CA  92226
Pro-Per

## Manual Notice List
The following are those who are **not** on the list to receive e-mail notices for this case (who
therefore require manual noticing):

Kevin O. Gunn
P-78894
Chuckawalla Valley State Prison
P.O. Box 2289
Blythe, CA  92226
Pro-Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true
and correct and that this declaration was executed on <u>August 26, 2008</u> at San Diego, California.

_____                    _____
      L. Chavez                                                        Signature
      Declarant

SD2008801742
80275725.wpd

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GARY W. SCHONS
   Senior Assistant Attorney General
4  KEVIN VIENNA
   Supervising Deputy Attorney General
5  JAMES D. DUTTON, State Bar No. 73334
   Supervising Deputy Attorney General
6    110 West A Street, Suite 1100
     San Diego, CA 92101
7    P.O. Box 85266
     San Diego, CA 92186-5266
8    Telephone: (619) 645-2212
     Fax: (619) 645-2191
9    Email: Jim.Dutton@doj.ca.gov

10 Attorneys for Respondent

11               IN THE UNITED STATES DISTRICT COURT

12            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

14 | **KEVIN GUNN,** | Civil Case No. 08-0972 LAB (WMc) |
15 | Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS** |
16 | v. | |
17 | **J. F. SALAZAR, WARDEN,** | |
18 | Respondent. | Judge: The Hon. William McCurine, Jr. |
19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

Page

3    INTRODUCTION                                                                    1

4    PROCEDURAL HISTORY                                                              2

5    FACTUAL BACKGROUND                                                             6

6    ARGUMENT

7          I.    **THE PETITION IS BARRED BY THE STATUTE OF LIMITATIONS
                 PURSUANT TO 28 U.S.C. § 2244 (d) AND THEREFORE SHOULD BE**
8                **DISMISSED WITH PREJUDICE**                                     12

9          II.   **THE PETITION CONTAINS TWO UNEXHAUSTED
                 CLAIMS AND MUST BE DISMISSED**                                  16
10
     CONCLUSION                                                                  18

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2                                                                                          **Page**

3    **Cases**

4
*Castille v. Peoples*
5    489 U.S. 346
     109 S. Ct. 1056
6    103 L. Ed. 2d 380 (1989)                                                               16

7    *Anderson v. Harless*
     459 U.S. 4
8    103 S. Ct. 276
     74 L. Ed. 2d  3 (1982)                                                                 16
9
     *Biggs v. Duncan*
10   339 F.3d 1045 (9th Cir. 2003)                                                          15

11   *Bonner v. Carrey*
     425 F.3d 1145 (9th Cir. 2005)                                                          14
12
     *Brady v. Maryland*
13   373 U.S. 83 (1963)                                                                      2

14   *Coleman v. Thompson*
     501 U.S. 722,
15   111 S. Ct. 2546
     115 L. Ed. 2d 640 (1991)                                                               17
16
     *Cunningham v. California*
17   549 U.S. 270 (2007)                                                                     4

18   *Delhomme v. Ramirez*
     340 F.3d 817 (2003)                                                                    15
19
     *Gaston v. Palmer*
20   417 F.3d 1030 (9th Cir. 2005)                                                        13, 15

21   *Hasan v. Galaza*
     254 F.3d 1150 (9th Cir. 2001)                                                          13
22
     *Houston v. Lack*
23   487 U.S. 266
     108 S. Ct. 2379
24   101 L. Ed. 2d 245 (1988)                                                               13

25   *In re Robins*
     18 Cal.4th 770 (1998.)                                                                4, 14
26
     *Jackson v. Roe*
27   425 F.3d 654 (9th Cir. 2005)                                                           17

28

## TABLE OF AUTHORITIES  (continued)

**Page**

*Jefferson v. Budge*
419 F.3d 1013 (9th Cir. 2005)                                                   17

*Miles v. Prunty*
187 F.3d 1104 (9th Cir. 1999)                                                   13

*Nino v. Galaza*
183 F.3d 1003 (9th Cir. 1999)                                                 14, 15

*Pace v. DiGuglielmo*
544 U.S. 408
125 S. Ct. 1807
161 L. Ed. 2d 669 (2005)                                                     13-15

*People v. Duvall*
9 Cal.4th 464 (1995)                                                            4

*Rasberry v. Garcia*
448 F.3d 1150 (9th Cir. 2006)                                                  15

*Rhines v. Weber*
544 U.S. 269
125 S. Ct. 1528
161 L. Ed. 2d 440 (2005)                                                       17

*Rose v. Lundy*
455 U.S. 509
102 S. Ct. 1198
71 L. Ed. 2d 379 (1982)                                                      16, 17

*Smith v. Robbins*
528 U.S. 259 (2000)                                                            12

*Thorston v. Palmer*
479 F.3d 643 (9th Cir. 2007)                                                 13, 14

*Wixon v. Washington*
264 F.3d 894 (9th Cir. 2001)                                                   13


**Constitutional Provisions**

Antiterrorism and Effective Death Penalty Act                                  12, 13

**Statutes**

28 United States Code
        § 2244 (d)                                                              12
        § 2244(d)(1)(A)                                                         13
        § 2244(d)(1)(B)-(D)                                                     12
        § 2244(d)(2)                                                          13-15
        § 2254(b)                                                              16

**TABLE OF AUTHORITIES  (continued)**

1

                                                                                                    **Page**

2

3    **Court Rules**

4    CALJIC

5           No. 2.92                                                                                5, 6

6    California Code of Civil Procedures
            § 237                                                                                   2

7    Federal Rules Civil Procedure

8           6(a)                                                                                    12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GARY W. SCHONS
    Senior Assistant Attorney General
4   KEVIN VIENNA
    Supervising Deputy Attorney General
5   JAMES D. DUTTON, State Bar No. 73334
    Supervising Deputy Attorney General
6   110 West A Street, Suite 1100
    San Diego, CA 92101
7   P.O. Box 85266
    San Diego, CA 92186-5266
8   Telephone: (619) 645-2212
    Fax: (619) 645-2191
9   Email: Jim.Dutton@doj.ca.gov

10  Attorneys for Respondent

11              IN THE UNITED STATES DISTRICT COURT

12            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

13

| 14  KEVIN GUNN, | Civil Case No. 08-0972 LAB (WMc) |
|---|---|
| 15                              Petitioner, | **MEMORANDUM OF POINTS** |
| 16       v. | **AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED PETITION FOR WRIT OF** |
| 17  J. F. SALAZAR, WARDEN, | **HABEAS CORPUS** |
| 18                              Respondent. | The Hon. William McCurine, Jr. |

19

20                          **INTRODUCTION**

21

22          Petitioner Kevin Gunn is currently serving a prison term of 17 years, consisting of 12 years

23   under the "three strikes law" for two robbery convictions and a consecutive five year term for a

24   serious felony prior.  By his federal Amended Petition, he challenges both the conviction and the

25   sentence.

26          The Amended Petition is a mixed petition, because two of his seven claims were never

27   presented to the California Supreme Court.

28

1   More significantly, the Amended Petition is untimely, the applicable one-year limitations

2   period has run.  Accordingly, Respondent requests that the Amended Petition be dismissed with

3   prejudice.

## PROCEDURAL HISTORY

5

6   Petitioner appealed the judgment, contending that there was insufficient evidence to

7   support the judgment; trial court erred by excluding evidence of third party culpability; trial court

8   erred by denying his motion for juror identifying information; and the trial court erred by denying

9   his motion for a new trial on the bases of *Brady*[1] error, prosecutorial misconduct by presenting false

10   testimony, and jury misconduct (biased jury).  (Lodgment 1 at 1, 10-28.)  In case number D035782,

11   in an unpublished Opinion, the Court of Appeal affirmed the judgment, except for reversing the trial

12   court order denying Petitioner's motion for disclosure of juror identifying information.  (Lodgment

13   1 at 21, 29.)

14   On February 19, 2002, Petitioner filed a Petition for Review in the California Supreme

15   Court, case number S104425, which raised two grounds:

16   (1) Insufficiency of the evidence; and

17   (2) Motion for new trial should have been granted on the bases of *Brady* error,

18   prosecutorial misconduct by introducing false evidence, and jury misconduct.

19   (Lodgment 2 at 6, 21-25.)  In an order filed on July 20, 2005, the California Supreme Court denied

20   the Petition for Review in case number S104425.  (Lodgment 3.)

21   Petitioner appealed a post-judgment trial court order denying, in part, his petition for

22   release of personal juror identifying information after the Court of Appeal had remanded the case

23   for further proceedings.  Petitioner contended that the trial court erred by sustaining the five jurors'

24   objections, and California Code of Civil Procedures section 237 was unconstitutional as applied by

25   the trial court.  (Lodgment 4 at 1-2.)  In case number D041821, in an unpublished Opinion, the Court

26   of Appeal affirmed the trial court's post-judgment order.  (Lodgment 4.)

27

28

---

1. *Brady v. Maryland*, 373 U.S. 83 (1963).

1          On June 12, 2004, Petitioner filed a Petition for Review in the California Supreme Court,

2    case number S125763, on the ground that Petitioner's request for juror information, based only on

3    the jurors' objections, violated his constitutional rights to a jury trial and due process. (Lodgment

4    5.)  In an order filed on August 11, 2004, the California Supreme Court denied the Petition for

5    Review in case number S125763.  (Lodgment 6.)

6          On November 1, 2005, Petitioner signed a Petition for Writ of Habeas Corpus, which was

7    filed in California Superior Court, case number HC 18350, on November 4, 2005, and contained the

8    following grounds:

9        (1)   Inaccurate assistance of counsel (IAC) -  - and failure to object to protocol for

10         identifying photograph of automobile, failure to call an identity expert, and failure to

11         investigate a witness who was purportedly being paid to testify;

12       (2)    Newly discovered evidence/paying a witness to testify in a criminal proceeding;

13       (3)   Trial court error in sentencing Petitioner to the upper term on count two; and

14       (4)   IAC for failing to object to restitution amount and failure to request a hearing as to

15         Petitioner's ability to pay.  (Lodgment 7.)

16   On November 23, 2005, the Superior Court, in case number HC 18350, denied the Petition for Writ

17   of Habeas Corpus.  (Lodgment 8.)

18         On December 27, 2005, Petitioner signed a Petition for Writ of Habeas Corpus, which was

19   filed on December 30, 2005, in the California Court of Appeal, Fourth Appellate District, Division

20   One, case number D047765, and set forth the same grounds as his Petition for Writ of Habeas

21   Corpus, filed in the Superior Court on November 4, 2005.  (Lodgment 7, 9.)  In an order filed on

22   February 27, 2006, the California court of appeal, in case number D047765, denied the Petition for

23   Writ of Habeas Corpus.  (Lodgment 10.)

24         In a Petition for Writ of Habeas Corpus, received by the California Supreme Court filed

25   on March 20, 2006, and filed on April 4, 2006, in case number S143209, Petitioner raised the same

26   grounds as he did in the just referred to Petitions in the Superior Court and the Court of Appeal.

27   (Lodgments 7, 9, 11.)  The California Supreme Court, in an order filed on November 29, 2006,

28

1 │ in case number S143209, denied the Petition for Writ of Habeas Corpus, citing *In re Robbins*, 18

2 │ Cal.4th 770, 780 (1998). (Lodgment 12.)

3 │         In a Petition for Writ of Habeas Corpus, purportedly mailed by Petitioner on

4 │ December 12, 2006, and filed by the California Supreme Court on December 18, 2006, in case

5 │ number S148849, Petitioner raised the same grounds as he did in the just referred to Petition for Writ

6 │ of Habeas Corpus in the Superior Court, Court of Appeal, and the California Supreme Court.

7 │ (Lodgments 7, 9, 11, 13.) On April 16, 2007, the Clerk of the Supreme Court, in case number

8 │ S148849, received Petitioner's Motion for Permission to Amend Petition for Writ of Habeas Corpus,

9 │ which requested that Petitioner be allowed to amend the Petition to include allegations of violations

10 │ of certain specified constitutional rights as to each of his claims. (Lodgement 14.) On April 30,

11 │ 2007, the Clerk of the Supreme Court, case number S148849, received Petitioner's Motion for

12 │ Permission to Amend Petition for Writ of Habeas Corpus, which requested that Petitioner be allowed

13 │ to amend the Petition with various factual assertions and legal arguments as to grounds one, three,

14 │ and four of the Petition. (Lodgment 15.) On June 11, 2007, the Clerk of the Supreme Court, in case

15 │ number S148849, received Petitioner's Permission for Motion to Amend Petition for Writ of Habeas

16 │ Corpus, which requested that Petitioner be allowed to amend the Petition with legal arguments

17 │ (focused on *Cunningham v. California*[2]) as to ground three of the Petition. (Lodgment 16.) On

18 │ September 27, 2007, the California Supreme Court filed an order denying the Petition for Writ of

19 │ Habeas Corpus, in case number, S148849, citing *People v. Duvall*, 9 Cal.4th 464, 474 (1995).

20 │ (Lodgment 17.)

21 │         On October 4, 2007, Petitioner signed a Petition for Writ of Habeas Corpus, which was

22 │ filed on October 31, 2007, in the California Superior Court, case number HC 18350, and contained

23 │ the following grounds:

24 │     (1)   Insufficient evidence to support his conviction;

25 │     (2)   Trial court denied his constitutional rights by excluding third party culpability

26 │ evidence;

27 │

28 │     2.  *Cunningham v. California*, 549 U.S. 270 (2007)

1    (3)   Motion for a new trial should have been granted by the trial court because of lack of

2    evidence, failure to timely provide discovery (*Brady* error), false testimony by an police

3    officer, biased juror, prosecutorial misconduct (presenting false testimony), law enforcement

4    misconduct, and jury misconduct;.

5    (4)   Trial court erred in denying Petitioner's request for juror information;

6    (5)   Trial court erred, on remand, by violating the Court of Appeal order regarding

7    disclosure of juror information; and

8    (6)   The identification instruction (CALJIC # 2.92) was inadequate and violated

9    Petitioner's constitutional rights.  (Lodgment 18.)

10   On December 18, 2007, the California Superior Court, in case number HC 18350, filed an order

11   denying the Petition for Writ of Habeas Corpus.  (Lodgment 19.)

12         On December 13, 2007, Petitioner signed a Motion  to Amend Writ of Habeas Corpus

13   Petition which was filed on December 18, 2007, in the California Superior Court, in case number HC

14   18350.  The motion requested that Petitioner be allowed to amend his Petition to add a claim for

15   ineffective assistance of trial counsel for counsel's failure to bring a motion to strike his serious

16   felony prior.  (Lodgment 20.)  In case number HC 18350, the Superior Court treated Petitioner's

17   motion as a successive petition for a writ of habeas corpus, and filed an order on February 1, 2008,

18   denying the Petition (motion to amend).  (Lodgment 21.)

19         On May 22, 2008, Petitioner signed the Petition for Writ of Habeas Corpus which was filed

20   with this Court on May 27, 2008.  The Petition raised eight claims (grounds), with claims two and

21   four not having been exhausted in state court:

22   (1)   Insufficient evidence to support conviction;

23   (2)   Trial court erred in excluding evidence of third party culpability;

24   (3)   Motion for a new trial should have been granted by the trial court because of the lack

25   of evidence, failure to timely provide discovery (*Brady*), false testimony by a police officer,

26   bias juror, prosecutorial misconduct (presenting false testimony), and law enforcement

27   misconduct;

28   (4)   Trial court erred in denying Petitioner's request for juror's information;

(5)   Trial court erred, on remand, by violating the Court of Appeal Order regarding disclosure of juror information;

(6)   The identification instruction (CALJIC # 2.92) was inadequate and denied Petitioner's constitutional right;

(7)   Trial court committed sentencing error in imposing the upper term and the five year serous prior enhancement, in violation of Petitioner's constitutional rights; and

(8)   IAC for counsel's failure to object to the protocol for identifying a car in a photograph, failure to put on an identity expert, failure to object to the restitution amount and request a rehearing as to Petitioner's ability to pay, and failing to investigate a claim that a prosecution witness was purportedly paid for his testimony.

On June 6, 2008, this Court ordered the Petition dismissed, without prejudice, on the basis that Petitioner failed to move this Court to proceed in forma pauperis and Petitioner had not alleged exhaustion as to claim six.

On June 19, 2008, Petitioner signed the First Amended Petition for Writ of Habeas Corpus, filed with this Court on June 23, 2008.  The Amended Petition asserted seven grounds, with grounds one through five being the same as the respective grounds (one through five) in the original federal Petition filed on May 27, 2008, grounds two and four still being unexhausted.  Ground six of the Amended Petition is the same as ground seven in the May 27, 2008, Petition, and ground seven in the Amended Petition is the same as ground eight of the May 27, 2008, Petition.

**FACTUAL BACKGROUND[3]**

*The Kamien Robbery*

Shortly before 2:00 p.m. on February 24, 1999, Leonard Kamien, age 71, was walking along Adams Avenue when a black man hit him on the back of his neck, knocking him unconscious. Kamien's assailant took his wallet and walked away.  David Schroeder and John Burkholder witnessed the attack while they were driving on Adams Avenue.  Schroeder dropped off Burkholder

---

3.   Factual Background is taken verbatim from the January 8, 2002, unpublished Court of Appeal Opinion (Lodgment 1 at 2-9).  The jury convicted Petitioner of the Paplin and Fortunato robberies, and were unable to reach a verdict (9 to 3 in favor of conviction) on the Kamien robbery.

1  to aid Kamien and then followed the assailant in his truck. As the assailant walked through a

2  backyard, Schroeder told Dennis Loper, who was standing in his yard, to watch the man. Loper

3  watched the man cross his yard. Loper went to his front yard and saw the man drive by in a small,

4  older-model black car. The man pulled the car over to the curb and bent over; as the man drove away

5  he dropped Kamien's wallet out of the car's window. Kamien later found that $50 was missing from

6  his wallet.

7            At about 2:11 p.m. that day, Gunn, using a money order, paid $40 of a $97.06 SDG&E

8  bill at a store on Adams Avenue.[4] San Diego Police Officer James Troussel responded to a dispatch

9  regarding the Kamien robbery; the dispatch described the assailant, his clothing, and the car he was

10  driving.[5] Troussel saw a car in the area that matched the description and followed it. After the car

11  made a few turns, Troussel stopped it at about 2:15 p.m. for speeding[6] Gunn was driving the car, a

12  Daihatsu, from which Gunn had to get out of the passenger's door because the driver's door did not

13  open. Gunn was wearing a baseball cap and a black and white plaid shirt. Gunn was cooperative,

14  but agitated, and Troussel released him after Burkholder positively excluded Gunn as the assailant.

15  At trial Schroeder testified that he was 90 percent certain that Gunn was the assailant. However,

16  before trial Schroeder did not identify Gunn in a photographic lineup as the assailant and described

17  the assailant as six feet tall and wearing dark clothing, a checkered shirt, and a dark baseball cap. At

18  trial Schroeder identified a ripped plaid Pendleton shirt that police found in Gunn's apartment as the

19  shirt the assailant wore.[7]

20

21

─────────────────────────────────────────────

22       4. Money orders could be purchased near the store.

23       5. At trial Troussel testified that the dispatch described the assailant as a light skinned black
    male wearing a baseball cap and a black and white plaid shirt, and driving a black compact car.
24  However, after listening to a tape of the dispatch, Troussel admitted it did not describe the assailant
    as light-skinned.
25

26       6. At trial Troussel testified that the car's driver made a few turns that possibly were evasive.
    However, neither the tape of his radio communications with the dispatcher nor the police report of
27  the incident indicated that the driving maneuvers may have been evasive.

28       7. At trial Angela Dearing, Gunn's girlfriend, identified the plaid shirt as Gunn's.

1   Burkholder described the assailant as a very big man who was six feet or taller, but

2   he did not identify Gunn as the assailant at trial or before trial during curbside and photographic

3   lineups.[8]   Loper positively identified Gunn at the preliminary hearing and at trial as the man he saw

4   walking in his yard and later driving by his house. However, Loper admitted he did not identify Gunn

5   as that man in a photographic lineup conducted on April 9. Leper had described that man to police

6   as a very big guy who was about six feet to six feet three inches tall. At trial he could discern no

7   difference between the shirt found in Gunn's apartment and the shirt that the man in his yard wore.

8   He also identified Dearing's black car in a photograph as the car that the man drove by his house.[9]

9   Another witness, Vera Brennan, did not identify Gunn as the assailant either in a photographic lineup

10  or at trial. However, she testified that Gunn's figure was very similar to the assailant's in that he was

11  very tall and stocky. She had described the assailant to police as a black man who wore warmup

12  pants, a black shirt, and a hat.

13  *The Pamplin Robbery*

14  At about 10:30 a.m. on March 4, 1999, Carol Pomplin, age 61, was walking along

15  33rd Street. She believed someone was behind her, felt a blow to the back of her head, and then fell

16  to the ground. Her purse was yanked off her arm and shoulder as she fell. As her assailant walked

17  away, Pomplin got up and yelled for help. She saw him put her purse inside his coat. She followed

18  him to an Arco station where the assailant opened the driver's door of a small, black car from the

19  passenger's side and then got in the driver's seat. The assailant had difficulty closing the driver's door

20  and starting the car's engine. Pomplin sought help at the Arco station and a 911 call was made. As

21  police arrived, the assailant drove away in the car.

22  At trial Pomplin identified Gunn as her assailant. However, she did not identify him

23  as her assailant in a photographic lineup or at Gunn's preliminary hearing.[10]  Pomplin described her

24  _____

25  8. At trial Gunn's counsel asserted that Gunn was six feet nine inches tall.

26  9. Although Loper reported to police that "C-2-5" were three consecutive numbers on
    the car's license plate number, Dearing's license plate number was "2 WCR 174."

27

28  10. At trial she testified that she recognized Gunn while she was on the witness stand during
    his preliminary hearing and he turned his face to the left. She was confused as to what she should

1   assailant to police as very tall with dark African-American hands.  At trial she identified Dearing's

2   car as the one her assailant drove away.

3            Tim Anderson saw the robbery of Pomplin from across the street.  He described the

4   assailant as a light-skinned, very large black man who was taller than six feet one inch.  At trial

5   Anderson could not positively identify Gunn as the assailant although he testified that Gunn's

6   physique was similar to the assailant's.  He identified Dearing's car as the one the assailant drove away

7   from the Arco station.  Anderson testified that before the assailant entered the car, he pointed at

8   Anderson and put his forefinger to his lips, which Anderson believed meant he should not say

9   anything.

10            Rosemary Andaya, the Arco station manager, testified at trial that she saw a very large

11  black man get in a small black car and have trouble with the driver's door and starting the car's engine.

12  Andaya stated that Dearing's car was similar to the one she saw at the station, but she was not positive

13  it was the same car.  She described the man as over six feet tall, weighing about 250 pounds and

14  having a dark complexion.  She did not identify Gunn as that man either at trial or in the photographic

15  lineup.

16  *The Fortunato Robbery*

17            Between noon and 12:30 p.m. on April 6, 1999, Rosetta Fortunato was placing

18  groceries in the trunk of her car, which was parked in a dental building parking lot.  Fortunato saw

19  a person coming toward her and was struck on the back of her head.  She became unconscious

20  momentarily. After regaining consciousness, Fortunato saw her assailant crossing the street with her

21  purse.

22            Fortunato testified that she saw her assailant's face before the attack and positively

23  identified Gunn as her assailant at the preliminary hearing and at trial.  When shown a photograph

24  of a checkered shirt found in Gunn's apartment, she identified it as the shirt her assailant wore.

25

26

27

28  do and after her preliminary hearing testimony she told a detective in the hallway that she had
    recognized Gunn as her assailant.

1  During a photographic lineup she stated that Gunn and another person looked like the man who

2  attacked her.[11/]  She told police that her assailant was taller than six feet.

3        Donald Stowell saw a man walking toward the dental building parking lot about 15

4  seconds before he heard a woman scream. Stowell testified that Gunn was identical or similar to the

5  man he saw. He selected Gunn in a photographic lineup as that man. He described the man to police

6  as being very tall--about six feet four inches--and wearing a baseball cap and a jacket. John Halloran

7  was across the street from the dental building parking lot when he heard screaming. Halloran saw

8  a man walk out from behind the dental building and then walk west on El Cajon Boulevard. The man

9  looked over his shoulder several times as he crossed the street. Halloran selected Gunn in a

10  photographic lineup as the person who most closely resembled that man. Halloran did not identify

11  Gunn as the man at the preliminary hearing. At trial he could not positively identify Gunn as that

12  man, but stated that Gunn had a similar height and build as that man. Halloran testified that the man

13  wore a checkered Pendleton shirt that was similar to a shirt found in Gunn's apartment. He described

14  the man to police as black and between six feet three inches and six feet four inches tall and wearing

15  a black and white checkered shirt.

16        Steve Doepker was standing in the parking lot of the Quik Mart convenience store on

17  El Cajon Boulevard when he heard screams coming from behind the dental building. He saw a man

18  come from behind that building, walk down the street, walk across the street and past him, and go into

19  an alley behind the Quik Mart. Doepker selected Gunn in a photographic lineup as that man. At trial

20  Doepker identified Gunn as that man. He testified that the man wore a checkered Pendleton shirt that

21  was similar to a shirt found in Gunn's apartment.

22        At about 12:30 p.m. that day, taxi cab driver Jackie Robertson was dispatched to the

23  Quik Mart to pick up a passenger. As he approached the store's front entrance, there were police

24  helicopters overhead and police cars driving up and down the street. Gunn quickly came out of the

25  store and got into the cab. Gunn was fidgety and did not give Robertson a destination address. Gunn

26

27

_____

28     11.  She thought the other person looked more like her attacker because he had more hair than Gunn.

1  slumped down in his seat and immediately removed his checkered, black Pendleton shirt. Robertson

2  testified that shirt was similar to a shirt found in Gunn's apartment. Gunn directed Robertson to drive

3  south on 35th Street across El Cajon Boulevard, turn left one block later on Orange Street, proceed

4  one block past Wilson Avenue, and then turn left into an alley behind Wilson Avenue. Robertson

5  drove up the alley in back of North Park Produce (which was near the dental building parking lot) and

6  dropped Gunn off in the alley at the security gate of an apartment complex at 4269 Wilson Avenue.

7  Robertson selected Gunn in a photographic lineup as that man and positively identified Gunn as that

8  man at the preliminary hearing and at trial.

9          A surveillance videotape from the Quik Mart showed Gunn entering the store and

10  asking for a cab. Helicopter noise could be heard in the background. When someone asked Gunn

11  what was going on outside, Gunn replied that "there is a man with a gun across the street." Dearing

12  viewed the videotape at trial and identified Gunn as the man shown on the tape wearing a plaid shirt

13  and hat.

14          Police found Fortunato's purse hidden inside a wheel of a car parked off the alley

15  behind the Quik Mart. Her credit cards and checkbook were found in a dumpster farther down the

16  alley. Police conducted surveillance of Gunn from April 9 through April 16, but terminated their

17  surveillance because Gunn apparently was aware of it.

18  *The Defense Case*

19          Dearing testified that she was Gunn's girlfriend. She owned a black Daihatsu with

20  a damaged driver's door that was inoperative during February 1999. Gunn occasionally drove her car

21  during that period. Dearing lived with Gunn at their Wilson Avenue apartment from July 1998 until

22  February 24, 1999, when she moved out to stay with her mother. She moved back in with Gunn in

23  mid-March 1999. She testified that on March 4, 1999, she drove her car to work and records showed

24  she worked 13 1/2 hours that day. She did not allow Gunn to drive her car during the period she lived

25  with her mother. She testified that Gunn did not work during February, March, or April 1999, except

26  for occasional part-time jobs. Their Wilson Avenue apartment was about a five minute walk from the

27  Quik Mart store. She was convicted of welfare fraud felonies in 1994 and 1996.

28

1         Gloria Dearing, Dearing's mother, testified that Dearing lived with her for two and

2    one-half to three weeks in late February 1999.  During that period, Dearing drove her car to work.

3    **ARGUMENT**

4    **I.**

5

6    **THE PETITION IS BARRED BY THE STATUTE OF LIMITATIONS PURSUANT TO 28 U.S.C. § 2244(d) AND THEREFORE SHOULD BE DISMISSED WITH PREJUDICE**

7

8         Because the present Petition was filed after April 26, 1996, it is governed by the

9    Antiterrorism and Effective Death Penalty Act ("AEDPA").  *Smith v. Robbins*, 528 U.S. 259, 68 n.3,

10    120 S. Ct. 746, 145 L. Ed. 2d 756 (2000).  As amended by AEDPA, 28 U.S.C. § 2244(d) now

11    provides for a limitations period of one year.[12/]

12

13

14

15

---

16    12.  The statute provides as follows:

17         (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The

18    limitation period shall run from the latest of -

19         (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

20    such review;

21         (B)  the date on which the impediment to filing an application created by the State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from

22    filing by such State action;

23         (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly

24    recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

25         (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of

26    due diligence.

27         (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim

28    is pending shall not be counted toward any period of limitation under this subsection.

1    Normally, the statute of limitations begins to run on the day following finality of

2    judgment, Fed. R. Civ. P. 6(a), unless one of three exceptions apply. 28 U.S.C. § 2244(d)(1)(B)-(D).

3    None of the exceptions applies to Petitioner: there was no state impediment to his seeking further

4    relief; his claims do not rely on any new constitutional right determined by the United States Supreme

5    Court to be retroactive; and the factual predicate for his current claims was known by the time his

6    conviction was final.[13]

7    Here, Petitioner filed his second and last Petition for Review in the California Supreme

8    Court on June 12, 2004, case number S125763. (Lodgment 5.) The Supreme Court denied his

9    Petition for Review in case number S125763 on August 11, 2004. (Lodgment 6.) Where no Petition

10   for Certiorari is filed with the United States Supreme Court, the State Court judgment becomes final

11   90 days after the California Supreme Court denies the Petition for Review. *Wixon v. Washington,* 264

12   F.3d 894, 897 (9th Cir. 2001); *Bowen v. Roe,* 188 F.3d 1157, 1158 (9th Cir. 1999); 28 U.S.C. §

13   2244(d)(1)(A). Accordingly, Petitioner's one-year statute of limitations commenced on November 10,

14   2004.

15   A Petitioner is entitled to statutory tolling for the period of time during which a

16   properly filed application for post conviction relief is pending in a state court. 28 U.S.C. §

17   2244(d)(2). A Petitioner has the burden of demonstrating facts supporting tolling. *See Pace v.

18   DiGuglielmo,* 544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *Gaston v. Palmer,* 417 F.3d

19   1030, 1034 (9th Cir. 2005) (as amended). Absent tolling, Petitioner must seek Habeas Corpus relief

20   within one-year and one-day after his state court conviction is deemed final. *Thorston v. Palmer,* 479

21   F.3d 643, 645 (9th Cir. 2007).

22

23

24

25

---

26   13. The operative knowledge is of the important facts, not their legal significance. *Hasan

27   v. Galaza,* 254 F.3d 1150, 1154 n.3 (9th Cir. 2001). Petitioner knew the facts underlying his
     conviction, his sentence and of his counsel's representation before the expiration of the time in

28   which he could have filed a Petition for Certiorari with the United States Supreme Court.

1    Petitioner signed his first state Petition for Writ of Habeas Corpus on November 1,

2   2005,[14] and it was filed in Superior Court case number HC 18350 on November 4, 2005. (Lodgment

3   7.) Thus, even using the earliest possible date, being the constructive filing date of November 1,

4   2005, a period of 355 days transpired, without tolling, before Petitioner's first petition, leaving only

5   ten days of the one-year limitation period. *See Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999).

6    A petition is not properly filed for purposes of 28 U.S.C. section 2244(d)(2) where the

7   state court denies the petition for being "untimely." *Pace*, 544 U.S. at 410, 417; *Bonner v. Carrey*,

8   425 F.3d 1145, 1149 (9th Cir. 2005). Where the petition is deemed "untimely," the limitation period

9   is not tolled, and thus continues to run, between state court order as to the petition proceeding the

10   petition which was deemed "untimely" and the order of "untimeliness" by the state court on the

11   successive petition. *See Thorston*, 479 F.3d at 646; *Bonner*, 425 F.3d at 1149.

12    Here, the California Court of Appeal denied a petition in case number D047765 on

13   February 27, 2006. (Lodgment 10.)  In regards to the successive petition filed in the California

14   Supreme Court, in case number S142309, the Supreme Court denied the petition on November 29,

15   2006, citing "*In re Robbins* (1980) 18 Cal.4th 770, 780." (Lodgment 12.) The *Robbins* citation by

16   the California Supreme Court constitutes a clear ruling that the petition in case number S142309 was

17   "untimely." *Thorston*, 479 F.3d at 645. Accordingly, the statute of limitations period was not tolled

18   for another 277 days, from the February 27, 2006, Court of Appeal order, until the November 29,

19   2006, California Supreme Court "untimeliness" order. Thus, the one-year limitation period for filing

20   a federal petition had expired by 266 days as of November 29, 2006.

21    Additionally, there is no tolling between the November 29, 2006, Supreme Court order

22   in case number S142309, and the second petition in the California Supreme Court, mailed on

23   December 12, 2006, and filed by the court on December 18, 2006, in case number S148849.

24   (Lodgment 13.)  *See Thorston*, 479 F.3d at 646; 28 U.S.C. § 2244(d)(2).  Accordingly, based on

25   ───────────────────────────────

26    14. Under the mailbox rule of *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed.
    2d 245 (1988), an incarcerated pro se prisoner's pleading is deemed filed at the moment of delivery

27   to prison officials.  This mailbox rule has been extended to both state and federal habeas corpus
    petitions for purposes of applying the AEDPA statute of limitations. *See Miles v. Prunty*, 187 F.3d

28   1104, 1106 n.2 (9th Cir. 1999).

1  Petitioner's "constructive" filing date of December 12, 2006, as to his petition in case number

2  S148849, another 12 days of the limitation period had run from November 30, 2006 , to the date of

3  mailing, December 12, 2006.

4  　　　　The California Supreme Court denied the petition in case number S1448849 on

5  September 25, 2007 (Lodgment 17), and Petitioner commenced a new round of state habeas petitions

6  by filing a petition in the Superior Court on October 13, 2006, which was purportedly signed on

7  October 4, 2007. (Lodgment 18.) Using October 4, 2007, as the constructive filing date, there was

8  no tolling of the limitation period between September 25, 2007, and October 3, 2007, another eight

9  days. *See Biggs v. Duncan*, 339 F.3d 1045, 1047-48 (9th Cir. 2003) [tolling does not apply to the

10  time periods between Petition's, where the successive petition is not progressing to the next higher

11  state court level]. Finally, Petitioner's last petition in state court was disposed of on February 1, 2008,

12  when the Superior Court denied his last successive petition. (Lodgment 21.)

13  　　　　Petitioner's first federal petition was filed on May 27, 2008, and purportedly signed

14  on May 22, 2008. Using the constructive filing date of May 22, 2008, for the federal petition,

15  additional 110 days was "used," between February 1, 2008, and May 22, 2008, for purposes of the

16  statute of limitations. *See Delhomme v. Ramirez*, 340 F.3d 817, 821 (2003) [limitations time period

17  runs from the disposition of the last pending state petition until the filing of the federal petition];

18  *Nino*, 183 F.3d at 1006-07; 28 U.S.C. § 2244(d)(2).

19  　　　　Thus, in aggregation, Petitioner "used" 762 days between the date that his judgment

20  became final in state court and the constructive filing of his federal petition. Thus, his one-year

21  limitation had long expired before his first federal petition.

22  　　　　Petitioner has made no claim for equitable tolling, and no basis is apparent for such

23  tolling.

24  　　　　Although the United States Supreme Court has never sanctioned equitable tolling in

25  § 2254 cases, the Ninth Circuit has recognized that it may apply in rare cases. But before equitable

26  tolling may be considered, a petitioner must establish two elements "(1) that he has been pursuing his

27

28

1  rights diligently, and (2) that some extraordinary circumstance stood in his way." *Rasberry v. Garcia*,

2  448 F.3d 1150, 1153 (9th Cir. 2006) (quoting *Pace v. DiGuglielmo*, 544 U.S. at 408); *Gaston v.*

3  *Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005).

4      It is clear from the procedural history that Petitioner has not been diligent. Following

5  California Supreme Court's denial of his second Petition for Review on August 11, 2004, and taking

6  into account the 90 days in which Petitioner could have filed a petition for writ of certiorari, Petitioner

7  never sought any relief until he filed his first state habeas corpus petition on November 1, 2005,

8  almost a year later.

9

10      In addition, after the California Supreme Court denied his last state habeas corpus

11  petition on February 1, 2007, Petitioner waited for close to four months, until May 20, 2008, before

12  signing his initial federal petition.

13      Petitioner's lack of diligence precludes equitable tolling, and the Petition should be

14  dismissed as untimely.

**II.**

15

**THE PETITION CONTAINS TWO UNEXHAUSTED CLAIMS**

16  **AND MUST BE DISMISSED**

17      In ground two of the current Amended Petition's seven grounds for relief, Petitioner

18  complains that the trial court erred by excluding evidence of third party culpability evidence.

19  (Amended Pet. at 10-14.) In ground four of the Amended Petition, Petitioner complains that the trial

20  court erred in refusing his request for jury information (prior to first appeal). (Amended Pet. at 23-

21  25.) However, in Petitioner's multiple presentations of claims to the California Supreme Court, he

22  did not raise grounds two and four of his federal Amended Petition. (Lodgments 2, 5, 11, 13.)

23      Because the claims in grounds two and four have never been presented to the state's

24  highest court, these claims are unexhausted . A federal court may not grant federal habeas corpus

25  relief unless the petitioner has exhausted his state court remedies with respect to all claims contained

26  in the petition. 28 U.S.C. § 2254(b); *Castille v. Peoples,* 489 U.S. 346, 349, 109 S. Ct. 1056, 103 L.

27  Ed. 2d 380 (1989); *Rose v. Lundy,* 455 U.S. 509, 150, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

28

Memorandum of Points and Authorities in Support of Motion to Dismiss      08-0972 LAB (WMc)

1    In order to exhaust state court remedies, the federal contention must have been fairly presented to

2    the state's highest court, which in turn must have disposed of the claim on the merits. *Anderson*

3    *v. Harless,* 459 U.S. 4, 6-8, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).

4         Here, because two claims are unexhausted, the Amended Petition presents both

5    exhausted and unexhausted claims. A federal court cannot entertain a petition that includes both

6    exhausted and unexhausted claims. *Rose v. Lundy,* 455 U.S. at 510. Petitioner has the option of

7    amending the petition again to delete the unexhausted claims, or he may accept dismissal, without

8    prejudice, to pursue the unexhausted claims in state court, or he may ask this Court to stay his current

9    Amended Petition while he seeks to exhaust. *Id.; see also Jackson v. Roe,* 425 F.3d 654 (9th Cir.

10   2005) (federal court may stay mixed petitions); *Jefferson v. Budge,* 419 F.3d 1013 (9th Cir. 2005)

11   [district court must advise a Petitioner of the choices available under *Rose v. Lundy*].

12        Petitioner can attempt to exhaust his claims by filing a Petition for Writ of Habeas

13   Corpus in the California Supreme Court. However, California's procedural rules may bar Petitioner

14   from obtaining a ruling on the merits of his claims in the California Supreme Court. Respondent

15   reserves the right to argue the applicability of a procedural bar in state court. If Petitioner is

16   procedurally barred from bringing the claims, Respondent may argue that those procedural rules bar

17   subsequent federal habeas review of those claims as well as any statute of limitations issue that might

18   arise. *See Coleman v. Thompson,* 501 U.S. 722, 729-35,111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

19        Additionally, if Petitioner asks for a stay, this Court should not grant a stay unless he

20   demonstrates good cause for failing to exhaust the claims before now. The stay procedure would be

21   authorized only if "the Petitioner had good cause for his failure to exhaust, his unexhausted claims

22   are potentially meritorious, and there is no indication that the petitioner has engaged in intentionally

23   dilatory litigation tactics." *Rhines v. Weber,* 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005).

24   Respondent believes it would be difficult for Petitioner to show good cause for failing previously to

25   raise these claims in the California Supreme Court because, inter alia, those claims were raised and

26   addressed in California Court of Appeal case number D035782, the unpublished Opinion in that case

27

28

1    was filed on January 8, 2002. (Lodgment 1.) Moreover, Petitioner cannot demonstrate that the claim

2    is potentially meritorious, as his current Petition is already untimely, as set forth under argument

3    heading I, above.

## CONCLUSION

4

5           For the foregoing reasons, Respondent respectfully requests that this Court deny the

6    Amended Petition with prejudice as untimely and deny any future request for a certificate of

7    appealability.

           Dated:  August 26, 2008

8

9                          Respectfully submitted,

10                         EDMUND G. BROWN JR.
                           Attorney General of the State of California

11                         DANE R. GILLETTE
                           Chief Assistant Attorney General

12                         GARY W. SCHONS
                           Senior Assistant Attorney General

13                         KEVIN VIENNA
                           Supervising Deputy Attorney General

14

15                         /s/ James D. Dutton_____

16                         JAMES D. DUTTON
                           Supervising Deputy Attorney General

17                         Attorneys for Respondent

18

                           Jim.Dutton@doj.ca.gov

19

20   JDD:llc

21   80273758.wpd

     SD2008801742

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE BY U.S. MAIL

Case Name:    ***Gunn v. Salazar***                    Case No.:      **08-0972 LAB (WMc)**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On August 26, 2008, I served the following documents: **MEMORANDUM OF POINTS AUTHORITIES IN SUPPORT OF MOTION TO DISMISS AMENDED PETITION FOR WRIT OF HABEAS CORPUS** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 110 West A Street, Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

Kevin O. Gunn
P-78894
Chuckawalla Valley State Prison
P.O. Box 2289
Blythe, CA 92226

## Manual Notice List

The following are those who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing):

Kevin O. Gunn
P-78894
Chuckawalla Valley State Prison
P.O. Box 2289
Blythe, CA 92226
Pro-Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on August 26, 2008, at San Diego, California.

|                        |                      |
| ---------------------- | -------------------- |
| L. Chavez              |                      |
| Declarant              | Signature            |

SD2008801742
80275729.wpd